683 S.E.2d 575

Ryan STRICK, Petitioner
Below, Appellant

v.

Joseph CICCHIRILLO, Commissioner,
West Virginia Division of Motor Ve-
hicles, Respondent Below, Appellee.

No. 34135.

Supreme Court of Appeals of
West Virginia.

Submitted March 24, 2009.

Decided May 1, 2009.

Carter Zerbe, David Pence, Law Office of Carter Zerbe, Charleston, WV, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, WV, for Respondent.

McHUGH, Justice.

Appellant Ryan Strick challenges the October 25, 2007, order of the Circuit Court of Kanawha County upholding the decision of the Appellee Division of Motor Vehicles ("Division") to revoke his operator's license for first offense driving under the influence of alcohol and refusing to submit to a secondary chemical test.[1] As grounds for his appeal, Appellant argues that the arresting officer lacked the requisite degree of suspicion to stop his vehicle on the night of his arrest. While the Division maintains that an unlit tail lamp provided the police officer with the necessary basis for instituting a traffic stop, Mr. Strick contends that driving with only one operable tail lamp does not violate state traffic laws.[2] Having carefully examined the arguments on this issue, we find that the trial court did not commit error and, accordingly, affirm.

## I. Factual and Procedural Background

On November 18, 2005, at approximately 1:08 a.m., Officer C.J. Rider of the Charleston Police Department was conducting routine traffic patrol when he observed a red Jeep Wrangler. Because the vehicle had a non-functioning taillight on the passenger side of the vehicle, Officer Rider initiated a traffic stop. When the arresting officer approached the vehicle to identify its driver, he detected the odor of alcohol on Mr. Strick's breath; observed the bloodshot condition of his eyes; and noted a slurring of his speech. Based on these observations, Appellant was instructed to exit his vehicle.

Following his unsteady exit from the vehicle, Officer Rider administered several field sobriety tests to Mr. Strick: the horizontal gaze nystagmus test; the walk-and-turn test; and the one-leg stand test. Throughout the testing, Appellant displayed prototypical signs of inebriation as his performance demonstrated that he had balance-related difficulties and impaired vision. When asked to submit to a preliminary breath test, Mr. Strick refused. Appellant was then arrested for driving under the influence of alcohol ("DUI") and transported to the Charleston Police Department. Despite being provided with information regarding the penalties for refusing to submit to a secondary chemical test,[3] Mr. Strick twice refused to take the secondary chemical test.

Appellant's privilege to operate a motor vehicle was revoked for six months for DUI and one year for refusing the secondary chemical test.[4] Appellant requested an administrative hearing in connection with the revocation of his operator's license and that

---

1. *See* W.Va.Code §§ 17C–5–2, –4 (2004).

2. *See* W.Va.Code § 17C–15–5(a) (2004).

3. *See* W.Va.Code § 17C–5–4.

4. The Division entered an "Order of Revocation Implied Consent/DUI" on November 29, 2005.

hearing was held before the Division on September 20, 2006.[5] Included in the Division's final order upholding the administrative revocation[6] were two critical determinations: (1) that Officer Rider had reasonable grounds to stop Mr. Strick's vehicle for having or displaying defective equipment, and (2) that there was probable cause for the subsequent arrest of Appellant for DUI. Mr. Strick appealed the Commissioner's decision and by order of October 25, 2007, the circuit court affirmed the final order. Through this appeal, Appellant challenges whether the administrative tribunal and the trial court both erred in concluding that Officer Rider had the predicate reasonable suspicion necessary to institute a lawful traffic stop on the night of his arrest.

## II. Standard of Appeal

■ An appeal from a circuit court's review of an administrative order is governed by the following standard:

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996). With this two-pronged standard in mind, we proceed to determine whether the trial court committed error in upholding the administrative revocation of Appellant's operator's license on the facts of this case.

## III. Discussion

At the heart of this appeal is a purely legal question: Whether the operation of a motor vehicle with one inoperable taillight is a misdemeanor traffic violation which may in turn provide the predicate basis for a lawful traffic stop.[7] Relying on a statutory provision that requires motor vehicles to be equipped "with at least one tail lamp," Appellant argues that at the time of his arrest he was not operating his vehicle in violation of any traffic laws. W.Va.Code § 17C-15-5. Conversely, the Division adopts the position that all of the tail lamps must be in proper working order when a vehicle is equipped with multiple tail lamps.

We necessarily begin our analysis of the issue presented by reviewing the applicable statutes. The statute which addresses the penalty for driving an unsafe or improperly equipped motor vehicle is West Virginia Code § 17C-15-1. Pursuant to subsection a. of that statute

It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, *or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article,* or which is equipped in any manner in violation of this article, or for any person to do any act forbidden or fail to perform any act required under this article.

W.Va.Code § 17C-15-1(a) (emphasis supplied).

The specific requirements that pertain to tail lamps are separately addressed in section five of chapter fifteen. *See* W.Va.Code § 17C-15-5. Under section five, the Legislature has mandated as follows with regard to tail lamps:

(a) *Every motor vehicle,* trailer or semi-trailer, and any other vehicle which is being drawn at the end of a train of vehicles, *shall be equipped with at least one tail lamp mounted on the rear,* which, when lighted as hereinbefore required, shall emit

---

**5.** The record indicates that Appellant declined to testify or put on any evidence at the administrative hearing.

**6.** The order was entered on April 30, 2007.

**7.** Although the question of whether one operable tail lamp meets the equipment requirements of

our traffic laws was raised in *State v. Cline,* 206 W.Va. 445, 525 S.E.2d 326 (1999), the appellant's failure to properly preserve the matter for appeal prevented us from addressing the merits of the issue in that decision. *See id.* at 450, 525 S.E.2d at 331.

a red light plainly visible from a distance of five hundred feet to the rear, provided that in the case of a train of vehicles only the tail lamp on the rearmost vehicle need actually be seen from the distance specified.

(b) Every tail lamp upon every vehicle shall be located at a height of not more than sixty inches nor less than twenty inches to be measured as set forth in section three (b) [§ 17C–15–3(b) ] of this article.

(c) Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. *Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.*

W.Va.Code § 17C–15–5 (emphasis supplied).

Appellant suggests that the issue before us is resolved by the language of section 5(a) which requires motor vehicles to have "at least one tail lamp." W.Va.Code § 17C–15–5(a). Because a vehicle is permitted to be equipped with only one tail lamp, Mr. Strick contends that a vehicle which has only one of two tail lights in working condition does not violate the requirements of our traffic laws. Moreover, Appellant asserts that section five, as the specific statute governing tail lamps, must be viewed as the controlling statute if any conflict arises with other provisions in chapter fifteen. *Cf.* §§ W.Va.Code 17C–15–5, –1; *see generally* Syl. Pt. 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984) (recognizing statutory construction rule that specific statute is given precedence over general statute).

Appellant seeks to view the legislative mandate that motor vehicles be "equipped with at least one tail lamp" in isolation from other provisions included in chapter fifteen, including additional provisions set forth in section 5. *See* W.Va.Code § 17C–15–5. While there is no question that a vehicle whose design includes only one tail lamp is in compliance with the equipment requirement set forth in section 5(a), that is not the

question before us. *See* W.Va.Code § 17C–15–5(a). We are asked to decide whether a vehicle equipped *by design* with two tail lamps that has only one of those lamps in working order is in violation of the equipment-related mandates of chapter fifteen.

To support its position that Appellant was driving an improperly-equipped vehicle at the time of his arrest, the Division relies upon a different provision of section five than Appellant. In detailing the wiring-related requirements applicable to tail lamps, the Legislature has provided: *"Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted."* W.Va.Code § 17C–15–5(c) (emphasis supplied). As the Division notes, the subject of this provision was written in both the singular and the plural to address the alternative design possibility of vehicles having one or more tail lamps. Of significance to the Division is the requirement that those tail lamps are "to be lighted" in tandem with the use of headlights or auxiliary driving lamps. *Id.* By looking to this additional design requirement, the Division contends that all of the tail lamps on a vehicle must "be lighted" to meet the mandates of chapter fifteen.

While Appellant contends that the Division's reliance on the tail lamp wiring requirements is misplaced, one appellate court has found this same statutory language to be determinative. In the analogous decision of *People v. Williams,* 236 Mich.App. 610, 601 N.W.2d 138 (1999), the court examined whether the traffic stop of a vehicle that had one inoperative tail lamp was lawful where the applicable statute required that motor vehicles *"shall be equipped with at least 1 rear lamp mounted on the rear . . . ." Id.* at 140 (quoting Mich. Comp. Laws § 257.686) (emphasis in original). Immediately following the quantitative tail lamp provision, the Michigan statute sets forth language virtually identical to section 5(c) of chapter fifteen which requires that a *"tail lamp or tail lamps . . . shall be wired so as to be lighted whenever the head lamps or auxiliary driv-*

*ing lamps are lighted.*" *Id.* (emphasis in original).

The Michigan appellate court quickly ruled out any violation of the provision that required vehicles to be "equipped with" at least one rear lamp. As the court opined, "defendant's automobile satisfied this requirement, because it was equipped with two tail lamps." 601 N.W.2d at 140. As to the second provision concerning the wiring of the tail lamp(s), the court reasoned that there were two ways to read the statute:

> [I]t could be read to provide either (1) that a tail lamp must be wired so as to be lighted as specified in order to comply with the Vehicle Code—the implication being that an automobile with a tail lamp not wired so as to be lighted as specified would be in violation of the Vehicle Code—or (2) that an automobile must be equipped with at least one tail lamp wired so as to be lighted as specified in order to be in compliance with the Vehicle Code.

*Id.* In concluding that the first interpretation was the proper reading of the statute, the Michigan court observed that the inclusion of the language "or tail lamps" would be rendered obsolete if it were to adopt the position that only one operative tail lamp was required under the statute. *See Williams*, 601 N.W.2d at 140. The fact that traffic safety was promoted by requiring operable tail lamps to be in compliance with the state vehicle code was also considered by the court. *See id.* As the court reasoned in *Williams*, "[w]e assume that when multiple tail lamps are included in an automobile's design, they are intended, in part, to function together to enhance safety." 601 N.W.2d at 141. Based on statutory provisions virtually identical to ours, the court held that a motor vehicle equipped with multiple tail lamps is in violation of the Michigan Vehicle Code if one or more of its tail lamps is inoperative and that such an equipment violation can provide the basis for a lawful traffic stop. *Id.; see State v. Lewis*, 738 So.2d 1212, 1215 (La.App. 2d Cir.1999) (finding violation of Louisiana traffic laws that required vehicles to have at

least one tail lamp and required lamps to be in proper condition where one tail lamp had hole in it); *see also State v. Lussier*, 171 Vt. 19, 757 A.2d 1017, 1029 (2000) (concluding that traffic stop for having only one of two taillights in working order was lawful because statute does not provide that one functioning taillight is sufficient).

Explaining its decision to uphold the license revocation in the final order, the Division first referenced the language of West Virginia Code § 17C–15–1(a), which makes it a misdemeanor offense to operate a vehicle "which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article." Turning then to West Virginia Code § 17C–15–5(c), the Division looked to the requirement that "[a]ny tail lamp or tail lamps ... shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted." Based on the mandate that lamps are required to be "in proper condition" "at all times" and the further requirement that tail lamps "be lighted" when head lamps are on, the Division concluded that a vehicle equipped by the manufacturer with multiple tail lamps is required to have each of its tail lamps in working order. Under reasoning analogous to that employed in *Williams*, the Division reasoned that a vehicle which is operated with only one of its two tail lamps in proper working condition violates the traffic laws of this state.

■ By arguing that only one working tail lamp is required by the language of West Virginia Code § 17C–15–5(a), Appellant has overlooked the distinction between statutorily-mandated equipment and the separate restriction that such equipment must be in working order. The equipment provisions contained in chapter fifteen were not intended to be read in a vacuum from the mandates set forth in section one.[8] The criminal offense established by the Legislature in section one for the operation of an unsafe or improperly equipped vehicle specifically includes a vehicle that does not have "lamps

---

8. Because we find no conflict between the operation of sections one and five of chapter fifteen, there is no basis for applying the statutory construction rule that requires that a specific statutory provision take precedence over a general provision. *See* W.Va.Code §§ 17C–15–1, –5.

and other equipment in proper condition." W.Va.Code § 17C–15–1(a).

 Appellant's position that the Legislature has never adopted a statutory provision which requires tail lamps to function properly at all times is simply incorrect. When sections one and five of chapter fifteen are read in *pari materia*, there is no question that tail lamps are required to be in working order at all times. *See* W.Va.Code §§ 17C–15–1, –5; Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975) (holding that "[s]tatutes which relate to the same person or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent"). Accordingly, we hold that when one or more of the tail lamps on a vehicle originally equipped with multiple tail lamps are not in proper working condition, the provisions of West Virginia Code § 17C–15–1(a) that establish a misdemeanor offense for the operation of an unsafe or improperly equipped motor vehicle are violated.

As the Division acknowledged during the oral argument of this case, the statutes under discussion are admittedly outdated because vehicles have been manufactured with more than one tail lamp for more than forty years now.[9] The provision that requires "at least one tail lamp" has not been amended since its original enactment in 1951. *See* W.Va. Code § 17C–15–5(a). Several states have expressly addressed the impact that vehicle design change had on their traffic laws by exempting cars manufactured before a specified date from having two tail lamps. *See, e.g.,* Conn. Gen.Stat. § 14–96c (2006) (requiring vehicles to have at least two tail lamps after Oct. 1, 1967, but permitting passenger cars manufactured prior to Oct. 1, 1957, to have at least one tail lamp); Haw.Rev.Stat. § 291–31 (2007) (providing that "vehicles manufactured prior to 1968 originally equipped with a single tail light assembly need only display a single tail light"); Nev. Rev.Stat. § 484.551 (2003) (allowing vehicles manufactured before July 1, 1969, to have at least one tail lamp "if they were originally equipped with only one tail lamp"). Wisconsin eliminated any confusion on this issue by amending its statute to provide: "No vehicle originally equipped at the time of manufacture and sale with 2 tail lamps shall be operated upon a highway during hours of darkness unless both such lamps are in good working order." Wis. Stat. § 347.13 (2005).

 Based on our determination that the Division and the circuit court correctly concluded that Appellant was operating his vehicle in violation of West Virginia Code §§ 17C–15–1(a) and 17C–15–5(c), the traffic stop initiated by Officer Rider was lawful. As we announced in syllabus point one of *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), "Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." In this case, Officer Rider effected a traffic stop for a misdemeanor violation of this state's traffic laws based on the inoperable tail lamp on Appellant's passenger side of his vehicle. As the United States Supreme Court observed in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), "[t]he foremost method of enforcing traffic and vehicle safety regulations ... is acting upon observed violations." 440 U.S. at 659, 99 S.Ct. 1391. Because the traffic stop was lawful, the evidence that led to Appellant's arrest for DUI is not subject to challenge as improperly obtained. Consequently, we find no basis for error with the trial court's decision to uphold the administrative revocation of Appellant's operator's license.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

**9.** Under federal law, two red tail lamps are required to be mounted on the rear of passenger vehicles, symmetrically placed on each side as far apart as practicable. *See* 49 C.F.R. 57.108, Table I-b at 425 (2008).