728 S.E.2d 539

**STATE of West Virginia, Petitioner**

v.

**Marcella Lorenza DUNBAR, Respondent.**

**No. 11–0555.**

Supreme Court of Appeals of
West Virginia.

Submitted May 22, 2012.

Decided June 13, 2012.

---

**20.** *See supra,* note 19.

R. Matthew Vital, Esquire, Vital & Vital, L.C., Huntington, WV, for Petitioner.

Darrell V. McGraw, Jr., Esq., Attorney General, Benjamin F. Yancey, III., Esq., Assistant Attorney General, Charleston, WV, for Respondent.

PER CURIAM:

This is an appeal by Marcella Dunbar (hereinafter "Petitioner") from an order of the Circuit Court of Cabell County accepting the Petitioner's plea to the charge of possession of a controlled substance with intent to deliver and sentencing the Petitioner to the State penitentiary for not less than one nor more than fifteen years. The Petitioner contends that the trial court erred in failing to grant his motion to suppress the evidence gathered pursuant to a traffic stop of the vehicle in which he was riding as a passenger. The trial court ruled that the police officer had a reasonable, articulable suspicion to effect the traffic stop. Upon thorough

review by this Court, the decision of the Circuit Court of Cabell County is reversed, and this case is remanded for the entry of an order reversing the Petitioner's conviction.

I. Factual and Procedural History

On January 28, 2010, Officer James Leist of the Huntington Police Department observed a vehicle being operated without a passenger side mirror. The vehicle was being driven by Jerrod Dillon (hereinafter "Dillon"), and the Petitioner was a passenger in the vehicle. Officer Leist initiated a traffic stop based upon defective equipment, specifically the absence of the passenger side mirror.[1] Officer Leist thereafter requested that a canine unit be dispatched to the scene. Upon inspection of the vehicle's exterior, the canine indicated the presence of drugs in the vehicle. A search of the vehicle revealed a substantial quantity of controlled substances.

On August 4, 2010, the Petitioner was indicted for three counts of possession of a controlled substance with intent to deliver. On September 23, 2010, the Petitioner moved to suppress the evidence found in the vehicle based upon the assertion that Officer Leist did not have reasonable suspicion or authority to stop the vehicle for a missing passenger side mirror, and on October 28, 2010, the lower court denied that motion. By order entered February 22, 2011, the Petitioner pled guilty, through a conditional *Kennedy* plea,[2] to one count of possession of a controlled substance with intent to deliver. Pursuant to that plea, the State agreed to dismiss the remaining two charges and to permit the Petitioner to appeal the lower court's denial of his motion to suppress. The Petitioner thereafter filed an appeal with this Court, asserting that the lower court erred in (1) determining that a missing passenger side mirror constituted sufficient reasonable suspicion to stop the vehicle in which the Pe-

---

1. The parties have stipulated that Officer Leist's sole reason for stopping the vehicle was the absence of the passenger side mirror. The parties have also stipulated that the vehicle was originally equipped with a passenger side mirror.

2. *See Kennedy v. Frazier,* 178 W.Va. 10, 357 S.E.2d 43 (1987). A *Kennedy* plea refers to the prerogative of a person charged with a crime to agree to a particular sentence for the crime without admitting his or her actual participation in

the crime. In syllabus point one of *Kennedy*, this Court stated as follows:

An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.

titioner was a passenger and (2) determining that a Huntington Police Officer had the authority to stop a vehicle for allegedly defective equipment.[3]

## II. Standard of Review

■ In syllabus point three of *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), this Court explained the standard of review applicable to suppression determinations, as follows: "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." With that standard of review as guidance, we proceed to an evaluation of the issues raised in this case.

## III. Discussion

The Petitioner in the case sub judice contends that the police officer who initiated the traffic stop of the vehicle in question did not have the requisite articulable, reasonable suspicion that the vehicle was subject to seizure or that a person in the vehicle was involved in the commission of a crime. Specifically, the Petitioner contends that a missing passenger side mirror does not provide reasonable suspicion for a traffic stop because the State of West Virginia does not require a motor vehicle to be equipped with a passenger side mirror.[4]

■ The issue of investigatory stops was addressed by the United States Supreme Court in *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The Court explained that "[t]he Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory

stops of persons or vehicles that fall short of traditional arrest." 534 U.S. at 273, 122 S.Ct. 744 (quoting *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In syllabus point one of *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), this Court addressed the Fourth Amendment protections in the context of traffic stops and explained that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]"

The State maintains that the police officer in this case properly stopped the vehicle based upon defective equipment. The State asserts that because this motor vehicle had been originally equipped with a passenger side mirror, the absence of that mirror constituted defective equipment sufficient to justify the traffic stop. Thus, the State argues that the lower court did not err in denying the Petitioner's motion to suppress the evidence obtained as a result of that motor vehicle stop.

West Virginia Code § 17C–15–1(a) (1951) (Repl.Vol.2009) addresses the operation of unsafe or improperly equipped motor vehicles in this state and provides as follows:

> It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and *other equipment in proper condition and adjustment as required in this article*, or which is equipped in any manner in violation of this article, or for any person to do any act forbidden or fail to perform any act required under this article.

---

**3.** In a motion to suppress filed in the lower court, the Petitioner asserted that Officer Leist, as a Huntington Police Officer, did not have authority to execute a traffic stop for defective equipment since he was not an employee of the Department of Public Safety. *See* W. Va.Code § 17C–16–2 (1951) (Repl.Vol.2009). The lower court rejected that argument. Although the Petitioner has asserted that issue as an assignment of

error on appeal, this Court does not address that issue since we reverse the case on other grounds.

**4.** The vehicle in which the Petitioner was riding was registered in the State of Ohio. Ohio *Revised Code* Annotated § 4513.23 does not require a passenger side mirror.

W. Va.Code § 17C–15–1(a) (emphasis supplied). In addition to those requirements, West Virginia Code § 17C–16–1 (1951) (Repl. Vol.2009), entitled "Vehicles not to operate without required equipment or in unsafe condition," also provides as follows:

> No person shall drive or move on any highway any motor vehicle, trailer, semi-trailer, or pole trailer, or any combination thereof unless the equipment upon any and every said vehicle is in *good working order and adjustment as required in this chapter* and said vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person ·upon any highway.

W. Va.Code § 17C–16–1 (emphasis supplied).

■ The references in West Virginia Code § 17C–15–1(a) to equipment "as required in this article" and in West Virginia Code § 17C–16–1 to "as required in this chapter" necessitate evaluation of the specific requirements that have been established for motor vehicle mirrors. The statute setting forth mirror requirements is West Virginia Code § 17C–15–35 (1951) (Repl.Vol.2009), which provides as follows:

> Every motor vehicle which is so constructed or loaded as to obstruct the driver's view to the rear thereof from the driver's position shall be equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least two hundred feet to the rear of such vehicle.

Thus, the statute governing mirrors does *not* require a passenger side mirror.[5] The statutes prohibiting the operation of a vehicle in an unsafe condition or without required equipment, as quoted above, must be read in conjunction with this specific statutory requirement for mirrors. As this Court has previously recognized,

> [s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and imple-

mentation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 6, *Community Antenna Serv., Inc. v. Charter Commun. VI, LLC,* 227 W.Va. 595, 712 S.E.2d 504 (2011) (quoting Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975)). Based upon an assessment of the statutory requirements, the Petitioner contends that the absence of a passenger side mirror cannot form the predicate basis for a traffic stop for defective equipment. He argues that despite the fact that the vehicle in question was originally manufactured with both a driver's side and a passenger side mirror, a passenger side mirror is simply *not* required by statute and is *not* required to pass inspection in this state.

This Court addressed a similar issue in *Strick v. Cicchirillo,* 224 W.Va. 240, 683 S.E.2d 575 (2009). In that case, a vehicle stopped by police had a tail lamp which was not in proper working condition. This Court framed the operative question as follows: "Whether the operation of a motor vehicle with one inoperable taillight is a misdemeanor traffic violation which may in turn provide the predicate basis for a lawful traffic stop." 224 W.Va. at 242, 683 S.E.2d at 577. Although West Virginia Code § 17C–15–5(a) (1951) (Repl.Vol.2009) required *only one* tail lamp, an *additional section* of the statute provided more precise guidance. Specifically, West Virginia Code § 17C–15–5(c) provided that "any tail lamp or tail lamps ... shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted." Thus, the *Cicchirillo* Court found statutory authority for the conclusion that the non-functioning tail lamp did form the requisite basis for the traffic stop. As this Court noted, "the subject of this provision was written in both the singular and the

---

5. West Virginia C.S.R. § 91–12–2.1 incorporates by reference the Official Motor Vehicle Inspection Manual as promulgated by the Superintendent of the West Virginia State Police. That inspection manual provides for the inspection of

an "Exterior Rearview Mirror (Left Hand)" and an "Interior Rearview Mirror." A passenger side mirror is not referenced in those inspection provisions.

plural to address the alternative design possibility of vehicles having one or more tail lamps." *Id.* at 243, 683 S.E.2d at 578.

The present case is distinguishable from *Cicchirillo*. The *additional* statutory requirement that all of the tail lamps be properly lighted was the decisive factor in *Cicchirillo*. As this Court stated in that case, there were two standards applicable to tail lamps: "statutorily-mandated equipment and the separate restriction that such equipment must be in working order." *Id.* at 244, 683 S.E.2d at 579. There is no analogous *additional* requirement for a passenger side mirror in the case presently before this Court. Nor is there any requirement that all mirrors with which a vehicle is originally equipped be maintained in proper working order.

█   In a decision somewhat analogous to the present case, the Court of Appeals of Virginia reasoned that a police officer did *not* have reasonable articulable suspicion to initiate a traffic stop for a broken passenger side mirror. *Commonwealth v. Snyder*, 2007 WL 2301647 (Va.App.2007). As in the present case, the defendant in *Snyder* contended that because he had a functioning driver's side mirror and interior rearview mirror, he was not statutorily required to have a passenger side mirror. Thus, he argued, any defect in the passenger side mirror could not support a charge of defective equipment and could not form the basis for reasonable suspicion to conduct a traffic stop. *Snyder*, 2007 WL 2301647 at *1.

Similar to the West Virginia statute, the Virginia statute at issue in *Snyder* stated that it was unlawful to operate a motor vehicle if equipment *mentioned in the statute* was defective or in an unsafe condition. *See* Va.Code Ann. § 46.2–1003. With specific regard to mirrors, Code of Virginia Annotated § 46.2–1082 required only that the vehicle be equipped with "a mirror which reflects to the driver a view of the highway for a distance of not less than 200 feet to the rear of such vehicle." Further, Code of Virginia Annotated § 46.2–1082 required a vehicle manufactured after 1968 to have "at least one outside and at least one inside rear view mirror meeting the requirements of this section." The statute required mirrors on *both* sides of

the motor vehicle *only* if the rear view mirror was absent or obstructed. The *Snyder* court held that a traffic stop for a defect in a motor vehicle's mirrors had to be evaluated under the statute that established minimum requirements for mirrors. "Code § 46.2–1082 clearly requires only one outside mirror, as long as that vehicle is equipped with a rearview mirror." *Id.* at *3. Because the vehicle in question in *Snyder* was so equipped, the Virginia court concluded that the defendant "did not need a passenger's side mirror on his vehicle, and any defect in this mirror could not be a violation of the minimum requirements set out in that statute." *Id.* Thus, the traffic stop in that case was determined to be illegal, and the evidence obtained through the stop was suppressed.

In *State v. Reid*, 313 Ga.App. 633, 722 S.E.2d 364 (2012), the Court of Appeals of Georgia addressed a situation in which a motor vehicle had been stopped because it did not have any side view mirrors. The court ultimately held that the fact that the defendant's car had no side view mirrors did not provide a proper basis for the police officer to stop the defendant's vehicle. Georgia law did not require a motor vehicle to be equipped with side view mirrors. Pursuant to Official Code of Georgia Annotated § 40–8–72(a), a vehicle "so constructed or loaded as to obstruct the driver's view to the rear . . . shall be equipped with *a mirror* so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such vehicle." (Emphasis supplied). In *Reid*, although the record was clear that the defendant was operating the motor vehicle without side view mirrors, the police deputy "admitted that he could not recall whether the car had a rear view mirror, and the deputy assumed that it did." 722 S.E.2d at 365 n. 3.

This Court is also mindful of the language of West Virginia Code § 17C–16–2(a) (1951) (Repl.Vol.2009), authorizing traffic stops by the West Virginia State Police. That statute provides as follows:

> The department of public safety [West Virginia state police] may at any time upon reasonable cause to believe that a vehicle

is *unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair,* require the driver of such vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be appropriate. W. Va.Code § 17C–16–2(a) (emphasis supplied).[6] The language referencing "not in proper adjustment or repair" has been interpreted in other jurisdictions based upon similar statutes. In interpreting a Florida statute similar to the West Virginia statute in *Hilton v. State,* 961 So.2d 284 (Fla.2007), for instance, the Florida Supreme Court reasoned that "for a stop to be constitutional under the 'not in proper adjustment or repair' section ..., the equipment defect or damage must be in violation of the law." 961 So.2d at 290 (citing *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). In *Hilton,* the court concluded that a cracked windshield violates the statutory scheme *only* if it renders the vehicle in such unsafe condition as to endanger persons or property. *Id.* at 286. In ascertaining the "types of equipment defects which authorize an officer to stop a vehicle," the *Hilton* court observed that the safety inspection statute "must be read in conjunction with those statutes which delineate the specific equipment requirements for vehicles." *Id.* at 290 (quoting *Doctor v. State,* 596 So.2d 442, 446 (Fla. 1992)). A broader interpretation of the safety inspection statutes, the *Hilton* court reasoned, "would allow police to stop vehicles for malfunctioning air conditioners or even defective radios, a result clearly beyond the statute's intended purpose of ensuring the safe condition of vehicles...." *Id.* at 291 (quoting *Doctor,* 596 So.2d at 447). Thus, the definitive question in *Hilton,* as in the present case based upon our similar statutory requirements, was whether the alleged

defect was either (1) in *violation of state law;* or (2) rendered the vehicle in *such unsafe condition as to endanger* persons or property.[7]

This Court concludes that West Virginia Code §§ 17C–15–1(a), 17C–15–35, 17C–16–1, and 17C–16–2(a) must be read in conjunction with one another.[8] A traffic stop for defective equipment must be premised upon a defect in equipment that is *required* under West Virginia law. A passenger side mirror is not required equipment in this state, and there is no statute necessitating that all mirrors with which a vehicle is originally equipped be maintained in working order. Absent such specific statutory violation, the police officer in this case did not have the requisite reasonable articulable suspicion upon which to premise a traffic stop.

### IV. Conclusion

Based upon this Court's determination that the lower court incorrectly concluded that the vehicle at issue in this case was being operated in violation of West Virginia Code § 17C–15–1(a), this Court finds that the traffic stop initiated in this case was improper. Consequently, the evidence leading to the Petitioner's arrest for drug violations is not admissible evidence and should have been suppressed. The decision of the Circuit Court of Cabell County is reversed, and this case is remanded for the entry of an order reversing the Petitioner's conviction.

Reversed and Remanded.

Chief Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, C.J., dissenting:

I dissent because the initial traffic stop was lawful. I also write separately to point

---

**6.** Subsection (c) of West Virginia Code § 17C–16–2 rephrases the requirement slightly by stating that the officer shall give a written notice to the driver if the vehicle is found to be in unsafe condition or *"any required part or equipment"* is not present or not in proper repair or adjustment. W. Va.Code § 17C–16–2(c) (emphasis supplied).

**7.** The State did not argue that the absence of the passenger side mirror created a safety hazard of significant magnitude in this case.

**8.** The statutes upon which these vehicle equipment violations, traffic stops, and consequent criminal indictments must be assessed are almost exclusively based upon vehicle standards prevailing in this country over sixty years ago. As this Court previously observed in *Cicchirillo,* "the statutes under discussion are admittedly outdated...." 224 W.Va. at 245, 683 S.E.2d at 580.

out an important constitutional error not raised by the defendant: the detention of the defendant after the initial traffic stop was an illegal seizure.

## A. THE TRAFFIC STOP WAS LAWFUL

The police officer saw that the defendant's vehicle was missing the passenger side mirror. The mirror was a piece of safety equipment placed on the car by the manufacturer. W.Va.Code, 17C–15–1(a) [1951][1] prohibits vehicles from being driven in an "unsafe condition." The officer had an "articulable reasonable suspicion"[2] that the defendant's vehicle was in an unsafe condition in violation of W.Va.Code, 17C–15–1(a). Consequently, the officer was within his rights to stop the vehicle because of its defective equipment.

In *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court stated that a police officer must have an "articulable reasonable suspicion" in order to pursue an investigatory stop. This *Terry* standard has since been applied to traffic stops. In *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court reiterated the standard and held that "a policeman … whose observations lead him to reasonably suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person *briefly* in order to investigate the circumstances that provoke suspicion." Therefore, based on the *Terry* investigatory traffic stop standard, the missing mirror provoked the officer's reasonable suspicion that the driver was in violation of W.Va.Code, 17C–15–1(a). Hence, the police officer lawfully stopped the vehicle in order to investigate the missing equipment.

## B. THE DETENTION AFTER THE INITIAL STOP CONSTITUTED AN ILLEGAL SEIZURE

After the police officer stopped the vehicle for the missing passenger side mirror, the police officer did not issue a ticket or give the defendant a verbal warning about the missing equipment. Instead, the police officer detained the defendant and called for a K–9 drug unit. The officer did not have any cause to believe that the vehicle contained drugs. The officer testified that his reason for detaining the vehicle and its occupants was due to "basic police instinct; a hunch" that the defendant possessed illegal drugs. A "hunch" falls far short of the "articulable reasonable suspicion" standard that an officer must demonstrate to prolong a traffic stop. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. The defendant failed to raise this issue on appeal, but I believe this is a substantial issue that needs to be addressed.

When a police officer stops a vehicle for a traffic violation, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. U.S.*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). During the traffic stop, an officer may only detain the vehicle's occupants long enough to request a driver's license, vehicle registration, run a computer check and issue a ticket or a warning. *U.S. v. Digiovanni*, 650 F.3d 498, 507 (4th Cir.2011). In order to extend a traffic stop beyond this scope, a police officer must either obtain the driver's consent or possess some articulable evidence to support a reasonable suspicion that illegal activity is afoot. *U.S. v. Branch*, 537 F.3d 328, 336 (4th Cir.2008). The officer must have "at least a minimal level of objective justification" and "must be able to articulate more than an 'inchoate and unparticularized suspicion or **hunch** of criminal activity.' "

1. W. Va.Code § 17C–15–1(a) provides as follows:
   It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article, or which is equipped in any manner in

    violation of this article, or for any person to do any act forbidden or fail to perform any act required under this article.

2. "Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]" Syllabus Point 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

*Illinois v. Wardlow,* 528 U.S. 119, 123–124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Courts assess whether the officer had an articulated reasonable suspicion for a stop under the totality of the circumstances, giving "due weight to common sense judgments reached by officers in light of their experience and training." *U.S. v. Perkins,* 363 F.3d 317, 321 (4th Cir.2004).

In the present case, the officer lacked any evidence of possible illegal activity in order to constitutionally detain the vehicle other than his "hunch" that there may be criminal activity. Without reasonable suspicion or consent, the prolonged traffic stop to allow the K–9 unit time to reach the site constituted an illegal seizure in violation of the Fourth Amendment. A traffic stop that lasts longer than necessary to effectuate the purpose of the stop amounts to a *de facto* arrest that must be supported by probable cause, to be constitutionally valid. *See, U.S. v. Guijon–Ortiz,* 660 F.3d 757 (4th Cir.2011); *People v. Gomez,* 117 Cal.App.4th 531, 538, 12 Cal. Rptr.3d 398 (2004).

The traffic stop was initially lawful. However, when it was extended beyond its permissible scope and duration to effectuate the officer's "hunch," it became an unlawful seizure.

In summary, I dissent because the investigatory traffic stop was lawful. If the defendant had raised the obvious illegal seizure resulting from the unlawful detention, I would have agreed with the result reached by the majority opinion.