# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**$7,850 in U.S. Currency (Donald Asbury),**
**Respondent Below, Petitioner**

**FILED**

December 4, 2013
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)   No. 13-0499** (Kanawha County 11-C-960)

**State of West Virginia,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Donald Asbury, appearing *pro se*, appeals an order of the Circuit Court of Kanawha County, entered September 28, 2012, that found that $7,850 in U.S. Currency was forfeited to the State of West Virginia. Respondent State of West Virginia, by counsel Laura Young, filed a response. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This is a civil forfeiture proceeding against $7,850 in U.S. Currency that was owned and/or in possession of petitioner and/or Lauren Copen[1] at the date of the currency's seizure, March 15, 2011. The State filed a verified petition seeking forfeiture of the currency on June 10, 2011, in compliance with the West Virginia Contraband Forfeiture Act ("WVCFA").[2] *See* W. Va. Code § 60A-7-705(a)(4) (verified petition must be filed within ninety days of property's seizure). The verified petition was served on petitioner on August 24, 2011, and served on Ms. Copen on August 29, 2011. In the verified petition, the State demanded a jury trial.

---

[1] The relationship between petitioner and Ms. Copen is not apparent on the face of the record.

[2] The WVCFA is set forth at West Virginia Code §§ 60A-7-701 to -707, and constitutes article 7 of the Uniform Controlled Substances Act, West Virginia Code §§ 60A-1-101 to -11-6. The WVCFA was recently amended. *See* 2013 W.Va. Acts c. 37. However, the amendments are not germane to this appeal.

1

Neither petitioner nor Ms. Copen answered the verified petition. However, on January 4, 2012, petitioner's sister and general power of attorney, Debbie Thaxton, appearing *pro se*, filed an answer that claimed that their father had given petitioner the currency so that he could pay for a lawyer. *See* W. Va. Code § 60A-7-705(c) (a claimant to the property may file a claim). At a hearing held on July 10, 2012, the State withdrew its demand for a jury trial and gave its consent to a bench trial pursuant to Rule 39(a) of the West Virginia Rules of Civil Procedure.

At an August 23, 2012 bench trial, the State presented as its first witness Deputy J.L. Miller of the Kanawha County Sheriff's Department ("KCSD"). Deputy Miller testified that on March 15, 2011, he encountered a 2006 Hyundai Sonata in Sissionville, West Virginia. Deputy Miller observed that the vehicle did not have a passenger side mirror and that "the window tinting was dark, making it difficult to observe the number of occupants inside of the vehicle." Deputy Miller initiated a traffic stop and, "upon further inspection of the vehicle, he observed that the window tint exceeded the legal limits[.]" Deputy Miller spoke to both the vehicle's driver's, Ms. Copen, and the front seat passenger, petitioner.

Deputy Miller testified that as he spoke to Ms. Copen, "he could smell an odor consistent with the manufacture of Methamphetamine emitting from the inside of the Sonata." Deputy C.D. Lyons, a canine officer, arrived to assist Deputy Miller and allowed his drug-detecting dog to conduct an exterior search of the vehicle. "[T]he dog alerted on the driver's side door." The deputies asked the occupants to exit the Sonata.[3] The deputies patted down petitioner and Ms. Copen to ensure the officers' safety. During the pat-down search, the deputies found $7,690 on petitioner and $160 on Ms. Copen for a total of $7,850. Deputy Miller testified that based on his training and experience, the bundling and denominations of the currency found was consistent with drug trafficking.

A probable cause search of the Sonata was conducted. The deputies found the following items: (1) a vial of suspected Methamphetamine that later tested positive for the substance, inside of a red plastic container that was within petitioner's reach; (2) a syringe with an unknown liquid within it inside the pocket of a jacket on the front driver's seat; (3) a plastic bag of rock salt hidden in a yellow and black glove inside the glove compartment; and (4) a container of Coleman Fuel inside the trunk. Deputy Miller testified that (a) the items seized were consistent with the manufacture of Methamphetamine; and (b) the suspected Methamphetamine seized had a street value of $850 and was of an amount consistent with "dealer weight," not "user weight." The deputies arrested petitioner and Ms. Copen for drug-related offenses.

The State presented as its second witness Detective Anna Pile of the KCSD. Detective Pile testified that in an unrelated case, a search warrant was executed on petitioner's residence on November 3, 2010, and that a number of controlled substances were seized from the home including, but not limited to: Marijuana, Roxycontin, Phentermine, Focalin, Oxycodone, and Methamphetamine. Two sets of digital scales, plastic sandwich bags, pseudoephedrine tablets, and a large amount of cash was also seized. Petitioner was on bond for charges brought as a result of

---

[3] According to petitioner, there was a third occupant whom the deputies released.

the November 3, 2010 search when the deputies arrested him on March 11, 2011, following the traffic stop. By the time of the bench trial in the instant forfeiture proceeding, petitioner had been convicted of Conspiracy to Deliver Marijuana and Conspiracy to Deliver Focalin.

Detective Pile further testified that she listened to a number of phone calls placed by petitioner during the fall of 2011 to third parties from the South Central Regional Jail and that approximately twenty-three of the calls regarded drug sales, drug usage, or money related to drug sales. Detective Pile concluded that "[petitioner] controlled or attempted to control an ongoing drug distribution business, despite his incarceration during the fall of 2011."

While petitioner had claimed that the currency found on his person on March 11, 2011, related to a loan he received from a Jill Fisher[4] to pay for an attorney, Detective Pile testified that (1) Ms. Fisher denied loaning petitioner money; (2) she, Detective Pile, was familiar with Ms. Fisher's handwriting; and (3) the purported loan agreement produced on petitioner's behalf appeared to be a forgery. Detective Pile's investigation of the loan agreement was ongoing. The State also introduced *in forma pauperis* affidavits filed by petitioner. The circuit court noted that petitioner stated that he owned a vehicle, but had "no income from employment or loans . . . from any other source[.]"

The circuit court found that Ms. Thaxton, petitioner's sister and power of attorney, filed her answer to the State's petition on behalf of petitioner's parents. The circuit court provided Ms. Thaxton with the opportunity to testify, but she declined. In an unsworn statement made to the court, Ms. Thaxton stated that petitioner's parents had aided petitioner throughout his life and were the source of the currency seized from petitioner on March 11, 2011. Ms. Thaxton argued that the currency should be returned to petitioner's parents.[5] However, the circuit court found that Ms. Thaxton "did not produce any documents, checking account records[,] or savings records which would corroborate her claims." Accordingly, the circuit court ordered that $7,850 in U.S. currency was forfeited to the State based upon a finding of probable cause:

> 30.    That the [State] . . . has met the burden of proof as required by [the WVCFA].
>
> *        *        *
>
> 32.    That probable cause to seize [the currency] existed at the time of its seizure in Kanawha County, West Virginia, in that [the currency] did constitute proceeds . . . furnished or intended to be furnished in violation of [the Uniform Controlled Substances Act], by any person, in exchange for a controlled substance, to wit: [M]ethamphetamine, and/or

---

[4] The relationship between petitioner and Ms. Fisher was not explained.

[5] The irregularity of Ms. Thaxton's participation in the forfeiture proceeding will be discussed *infra. See infra* n. 13.

3

other controlled substances, proceeds traceable to the exchange of [M]ethamphetamine or moneys used, or which have been used or were intended to be used, to facilitate a violation of [the Uniform Controlled Substances Act].[6]

Petitioner now appeals the circuit court's September 28, 2012 order finding that the currency had been forfeited to the State.

We apply the standard for reviewing a judgment entered following a bench trial:

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006) (quoting Syl. Pt. 1, *Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996)).

## WHETHER THE MARCH 11, 2011, TRAFFIC STOP WAS LAWFUL

Petitioner asserts that the March 11, 2011 traffic stop of the Sonata was not lawful. In light of this Court's recent decision in *State v. Dunbar*, 229 W.Va. 293, 728 S.E.2d 539 (2012), the State concedes that the fact that the vehicle did not have a passenger side mirror did not provide valid justification for a traffic stop. The Court in *Dunbar* ruled that because state law did not require vehicles to have a passenger side mirror, the absence of such a mirror on an automobile in which the defendant was a passenger did not provide the police officer with reasonable, articulable suspicion to effect the traffic stop for defective equipment. 229 W.Va. at 299, 728 S.E.2d at 545. Thus, this Court accepts the State's concession that the lack of a passenger side mirror did not provide Deputy Miller with reasonable, articulable suspicion to effect a traffic stop.[7]

The State asserts that the Sonata's illegal window tinting provided Deputy Miller with reasonable suspicion to effect the traffic stop. As reflected in the circuit court's findings,[8] Deputy

---

[6] *See* W.Va. Code § 60A-7-703(a)(7).

[7] *See* Syl. Pt. 8, *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991) ("This Court is not obligated to accept the State's confession of error in a criminal case. We will do so when, after a proper analysis, we believe error occurred.").

[8] Petitioner did not request that a transcript of the August 23, 2012 bench trial be made a part of the record on appeal.

Miller testified that he observed not only that the vehicle did not have a passenger side mirror, but also that "the window tinting was dark, making it difficult to observe the number of occupants inside of the vehicle." Deputy Miller initiated a traffic stop and, "upon further inspection of the vehicle, he observed that the window tint exceeded the legal limits[.]" Pursuant to West Virginia Code § 17C-15-36a, it is a misdemeanor to have window tinting that has a light transmission of less than thirty-five percent. This Court agrees with the State that the Sonata's illegal window tinting provided an independent, valid basis for the traffic stop and concludes that the stop was lawful. *See Dunbar*, 229 W.Va. at 299, 728 S.E.2d at 545 (pertinent inquiry is whether the equipment defect renders the vehicle unsafe or constitutes "[a] violation of state law."). (Emphasis omitted.)

### WHETHER *CRAWFORD V. WASHINGTON*, 541 U.S. 36 (2004), APPLIES TO CIVIL FORFEITURE PROCEEDINGS

Petitioner argues that the use of hearsay evidence at the bench trial violated his rights under the Confrontation Clause[9] as interpreted by *Crawford v. Washington*, 541 U.S. 36 (2004). The State disputes petitioner's contention that it utilized improperly admitted evidence,[10] but further argues that the Confrontation Clause and *Crawford* do not apply to civil forfeiture proceedings. This Court finds that the State is correct because, in *United States v. Zucker*, 161 U.S. 475, 481 (1896), the Supreme Court of the United States held that the Confrontation Clause did not apply to civil forfeiture proceedings. There has been no indication, post-*Crawford*, that the Supreme Court will revisit its holding in *Zucker. See United States v. $40,955 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009). Therefore, this Court concludes this issue is without merit.[11]

---

[9] *See* U.S. Const., amend. 6 ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]").

[10] The State notes that both Deputy Miller and Detective Pile were available to be cross examined. The State states that of its exhibits, Exhibits One through Four were not testimonial in nature and were otherwise covered by exceptions to the hearsay rule, and Exhibits Five through Twenty-Three were photographs and, therefore, did not met the definition of hearsay evidence.

[11] Petitioner also indicates that he was physically prevented from appearing at the bench trial to confront the State's witnesses. This Court notes that petitioner was incarcerated on the date of the bench trial. In *State ex rel. Lawson v. Wilkes*, 202 W.Va. 34, 501 S.E.2d 470 (1998), this Court determined that a forfeiture proceeding under the WVCFA constituted an *in rem* proceeding against the property, and not a personal action against the property's owner. Accordingly, the inmate-owner of the property had no right to representation by a guardian ad litem. *See* Syl. Pt. 3, *Lawson*. Because petitioner had no right to be represented by a guardian ad litem, there was likewise no obligation on the State's part to facilitate petitioner's actual presence at trial.

## WHETHER THE STATE MET ITS BURDEN OF PROOF

Petitioner argues that the evidence was insufficient to sustain the forfeiture of the $7,690 that was found on his person.[12] The State asserts that it presented evidence at trial sufficient to prove that all of the currency had a substantial connection to drug trafficking. The circuit court found that the State met its burden of proof and that probable cause existed that "[the currency] did constitute proceeds . . . furnished or intended to be furnished in violation of [the Uniform Controlled Substances Act]."

The State's burden under the WVCFA is to prove by a preponderance of the evidence that the property is subject to forfeiture. *See* W. Va. Code § 60A-7-705(e). For the purposes of the Act, "probable cause" means that the seized property is "substantially connected" to illegal drug activity. *See* Syl. Pt. 4, *$43,000.00 in Cashier's Checks*, 214 W. Va. 650, 591 S.E.2d 208 (2003). After careful consideration of the parties' arguments, the circuit court's order, and the record on appeal, this Court concludes that the circuit court did not clearly err in finding that the State satisfied its burden of proving that the currency was substantially connected to drug trafficking. This Court notes that the significant deference is accorded to a court's findings following a bench trial.[13] Rule 52(a) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that when the court sits without a jury, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See also State v. Guthrie*, 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n. 9 (1995). Therefore, this Court finds that the circuit court did not abuse its discretion in ordering that $7,850 in U.S. currency was forfeited to the State.

For the foregoing reasons, we affirm.

Affirmed.

---

[12] Presumably, petitioner has no objection to the forfeiture of the $160 found on Ms. Copen.

[13] Petitioner complains that there should have been a jury trial rather than a bench trial. However, although petitioner was served with the State's verified petition, he never filed an answer and, therefore, never made a demand for a jury trial. The State withdrew its demand for a jury trial and consented to a bench trial. On appeal, petitioner asserts that, contrary to the circuit court's finding, Ms. Thaxton, who was his general power of attorney, filed her *pro se* answer on his behalf instead of their parents' behalf. However, Ms. Thaxton did not demand a jury trial in her answer. Accordingly, because petitioner did not demand a jury trial, this Court finds that petitioner cannot now complain that there was not one. The Court further notes that Ms. Thaxton's participation in the forfeiture proceeding was somewhat irregular. Regardless of whose agent Ms. Thaxton was, as a non-lawyer, she had no right to advocate for her principal(s) in a court proceeding. *See* Syl. Pt. 3, *Shenandoah Sales & Service, Inc. v. Assessor of Jefferson County*, 228 W.Va. 762, 724 S.E.2d 733 (2012).

**ISSUED:** December 4, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II