599 S.E.2d 781

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**LARRY M., Defendant Below, Appellant.**

No. 31587.

Supreme Court of Appeals of West Virginia.

Submitted April 13, 2004.

Decided May 27, 2004.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for the Appellee.

Earl Henry Hager, Public Defender Corporation, Clarksburg, for the Appellant.

PER CURIAM:

This is an appeal by Larry M., a juvenile, (hereinafter "Appellant")[1] from an order of the Circuit Court of Harrison County transferring custody of the Appellant from his parent to the Department of Health and Human Resources (hereinafter "DHHR") and authorizing his placement out of his home. The Appellant contends that the lower court erred in finding that no less restrictive disposition could be found for the Appellant, in placing him out of the home without adequate findings of fact, and for failing to have an adjudicatory order in place at the time of disposition. The Appellant also contends that the lower court erred in allowing the number of days the Appellant missed from school to be admitted as evidence through a witness other than the truancy officer who handled the official school records. Upon thorough review of the record, the briefs, and the applicable precedent, we find no reversible error and affirm the determination of the lower court.

I. Factual and Procedural History

On May 23, 2001, Harrison County Truancy Officer Judy Schillace filed a petition asserting that the Appellant had missed sixty-six days of school between August 2000 and May 2001. He was thirteen years of age at that time.[2] Pursuant to an agreement among the parties, the Appellant was granted an improvement period on July 30, 2001, with specific conditions to be fulfilled.[3] In March 2002, approximately eight months after that improvement period had begun, the State moved to revoke the improvement period because the Appellant had failed to maintain passing grades, had missed forty-eight days of school without excuse, and had disobeyed school rules, all in violation of the improvement period conditions. The Appellant's mother claimed that the Appellant had been sick many of the forty-eight days, but she was unable to provide proof of illness. The lower court ordered that medical records be obtained and directed that the Appellant undergo a psychological evaluation.

On June 4, 2002, the lower court reviewed the Appellant's medical records and a psychological evaluation.[4] Subsequent to such review, the court ordered the DHHR to provide the Appellant with in-home services and required the Appellant to undergo counseling at United Summit Center. In-home services were provided by West Virginia Youth Advocate, and counseling was obtained through a youth services provider, Kathy Cox.

On March 10, 2003, the State moved to revoke the in-home services and place the Appellant in a setting out of the home, pursuant to West Virginia Code § 49–5–11a(b)(2) (1998) (Repl. Vol. 2001),[5] asserting that the

---

1. We follow our traditional practice in domestic and juvenile cases involving sensitive facts and do not use the last names of the parties. *See, e.g., State ex rel. Amy M. v. Kaufman,* 196 W.Va. 251, 254 n. 1, 470 S.E.2d 205, 208 n. 1 (1996).

2. The Appellant was born on December 31, 1987. He is currently 16 years of age. West Virginia Code § 18–8–1 (2003), provides for compulsory school attendance for students between the ages of six and sixteen.

3. The conditions of the improvement period included a requirement that the Appellant attend school and maintain passing grades.

4. The psychological evaluation was performed by Levin & Associates on April 30, 2002.

5. West Virginia Code § 49–5–11a, in its entirety, provides as follows:

 (a) Services provided by the department for juveniles adjudicated as status offenders shall

Appellant had continued to miss school and had failed to cooperate with the offered services. The State's motion referenced the Appellant's receipt of services from the Truancy Diversion Program, counseling at the United Summit Center, weekly in-home counseling services from the West Virginia Youth Advocate, and counseling from Kathy Cox.

On March 25, 2003, the circuit court held a hearing on the State's motion for placement out of the home. During that hearing, the State introduced the testimony of Youth Services worker Kathy Cox and asked Ms. Cox whether the Appellant's attendance record had improved since she began providing in-home services. Counsel for the Appellant objected, claiming that attendance information could be elicited only through Truancy Officer Schillace.[6] The circuit court sustained the Appellant's objection, in part. The court prohibited Ms. Cox from testifying regarding information contained in the Appellant's school attendance reports, but allowed her to testify regarding general information she had regarding the Appellant's attendance of school. Ms. Cox thereafter testified that her knowledge of the attendance record was based upon a review of the official school attendance reports. In addition to Ms. Cox's testimony, both Juvenile Probation Officer Tracy Keener and Youth Services worker Kathy DeBose also testified that the Appellant's attendance record had remained problematic, with numerous unexcused absences.[7] Appellant's counsel did not object to the testimony of either Mr. Keener or Ms. DeBose. The Appellant and his mother also testified during the hearing and did not deny that the Appellant had accumulated many unexcused absences from school.

On April 2, 2003, the circuit court ordered that the Appellant be placed outside his home. Included in that order were the following findings:

1. The juvenile's mother is unable to provide proper care and supervision at this time;

2. Continuation in the home is contrary to the best interests of the juvenile respondent;

3. The Court has concerns that the health, safety and welfare of the juvenile are in danger at this time;

4. The Court's concerns about the health, safety, and welfare of the juvenile can only be addressed by placement;

be consistent with the provisions of article five-b [§§ 49–5B–1 et seq.] of this chapter and shall be designed to develop skills and supports within families and to resolve problems related to the juveniles or conflicts within their families. Services may include, but are not limited to, referral of juveniles and parents, guardians or custodians and other family members to services for psychiatric or other medical care, or psychological, welfare, legal, educational or other social services, as appropriate to the needs of the juvenile and his or her family.

(b) If necessary, the department may petition the circuit court:

(1) For a valid court order, as defined in section four [§ 49–1–4], article one of this chapter, to enforce compliance with a service plan or to restrain actions that interfere with or defeat a service plan; or

(2) For a valid court order to place a juvenile out of home in a nonsecure or staff-secure setting, and/or to place a juvenile in custody of the department.

(c) In ordering any further disposition under this section, the court is not limited to the relief sought in the department's petition and shall make every effort to place juveniles in community-based facilities which are the least restrictive alternatives appropriate to the needs of the juvenile and the community.

(d) The disposition of the juvenile may not be affected by the fact that the juvenile demanded a trial by jury or made a plea of denial. Any order providing disposition other than mandatory referral to the department for services is subject to appeal to the supreme court of appeals.

(e) Following any further disposition by the court, the court shall inquire of the juvenile whether or not appeal is desired and the response shall be transcribed; a negative response may not be construed as a waiver. The evidence shall be transcribed as soon as practicable and made available to the juvenile or his or her counsel, if it is requested for purposes of further proceedings. A judge may grant a stay of execution pending further proceedings.

6. Counsel for the Appellant did not specify whether he was objecting to testimony regarding the specific number of days missed or the more general decision to admit testimony that the Appellant had continued to miss school.

7. Mr. Keener testified that he was aware of 10 unexcused absences, and Ms. DeBose testified that the Appellant had accrued 35 unexcused absences since she began counseling him in October 2002.

5. The West Virginia Department of Health and Human Resources has made reasonable efforts to prevent placement.

On April 17, 2003, the circuit court entered an order placing the Appellant in Pressley Ridge School at Laurel Park in Clarksburg, West Virginia, with such placement to begin on April 24, 2003.

On appeal of that order, the Appellant seeks release and a new dispositional hearing. The Appellant contends that the circuit court erred in finding that no less restrictive disposition should be granted, erred by failing to make adequate findings of fact, and erred by disposing of the case when no order of adjudication had been entered. The Appellant further alleges that the circuit court erred in allowing the number of days that he missed school to be admitted into evidence by witnesses other than the official truancy officer.

## II. Standard of Review

 The Appellant's contentions on appeal regarding the legitimacy of the lower court's placement decisions are premised upon statutory and due process grounds. Because these issues raise matters of law, we consider them *de novo.* "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995); *accord State v. Paynter,* 206 W.Va. 521, 526, 526 S.E.2d 43, 48 (1999) ("To the extent that we are asked to interpret a statute or address a question of law, our review is *de novo.*") This Court has also consistently employed a three-part standard of review when reviewing a trial court's rulings, as follows:

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

8. We are aware that the lower court did not have the benefit of the guidance provided by this Court in *Damian,* since that opinion was not filed

Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997).

 With regard to the lower court's admission of evidence regarded by the Appellant as hearsay, we review such allegation under an abuse of discretion standard. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998). This Court also explained as follows in syllabus point one of *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995):

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

## III. Discussion

### A. Out of Home Placement

 The Appellant's first assignment of error is three-fold: he maintains that the lower court erred in placing him out of the home without adequate findings of fact; erred in finding that no less restrictive disposition would be appropriate; and erred in failing to have an adjudicatory order in place at the time of disposition. As emphasized by the Appellant, this Court has consistently accentuated the necessity for specific findings of fact and conclusions of law justifying out of home placement of juveniles. In the recent pronouncements of this Court in *State v. Damian R.,* 214 W.Va. 610, 591 S.E.2d 168 (2003),[8] we specified as follows in pertinent part of syllabus point two:

until after the lower court entered the order from which the Appellant appeals.

[S]uch a petition [for out-of-home placement] may only be granted upon a showing by clear and convincing evidence that such a custody or placement order is actually necessary; that the effective provision of services cannot occur absent such an order; and that all reasonable efforts have been made to provide appropriate services without an out-of-home placement or custody transfer; and orders granting such placement and/or transfer must be based on specific findings and conclusions by the court with respect to the grounds for and necessity of the order.

In the case sub judice, the lower court made specific findings of fact, as outlined in the final order and quoted above. In addition to those written findings, the lower court expressed the following findings orally at the conclusion of the March 2003 hearing:

There really hasn't been any denial on the part of [the Appellant] or his mother concerning his failure to regularly attend school this year. The Court's not been presented with any documentation that would justify the number of absences that have been alleged and he pretty much acknowledged that he has continued to be absent from school. So here we have three (3) school years now. We're into the third year that he has missed a substantial number of school days. The truancy continues, the services haven't been much good -- there may have been some improvement, but they really haven't done much good. . . .

Now the Court finds that Ms. W. [Appellant's mother] cannot provide the necessary supervision [the Appellant] needs at the present time to insure that he gets his education as required by law. As I indicated, he's now had three (3) school years that have been substantially missed because of his failure to regularly attend school. The Court finds that continuation in the home is contrary to [the Appellant's] best interests. Again, because he's not receiving his education. The Court believes that reasonable efforts have been made to prevent placement out of home by both the Court and the Department [DHHR] and that placement out of the home at this time is in his best interest.

Our review of the lower court's action in this matter reveals that the lower court provided sufficient findings of fact and conclusions of law to justify its conclusion that the Appellant's placement order was, in the language of *Damian,* "actually necessary; that the effective provision of services cannot occur absent such an order; and that all reasonable efforts have been made to provide appropriate services without an out-of-home placement and/or custody transfer." 214 W.Va. at 617, 591 S.E.2d at 175. This Court has noted that "the court must set forth on the record findings of fact which support the conclusion required by the statute. . . ." *State ex rel. B.S. v. Hill,* 170 W.Va. 323, 327, 294 S.E.2d 126, 129 (1982). We further find that the *Damian* requirements have been met since the order in the case sub judice "granting such placement or transfer ... [was] based on specific findings and conclusions by the court with respect to the grounds for and necessity of the order." 214 W.Va. at 617, 591 S.E.2d at 175.

■ The Appellant's contention that the lower court failed to choose the least restrictive appropriate alternative is equally without merit. Indeed, West Virginia Code § 49–5–11a(c) does require the court to "make every effort to place juveniles in community-based facilities which are the least restrictive alternatives appropriate to the needs of the juvenile and the community." This Court recognized this directive in *Damian,* explaining that "we must emphasize that the entire statutory scheme for status offenders contemplates that removal from the home and/or transfer of custody from a parent be undertaken only when necessary and upon clear and convincing proof that no less restrictive alternative is feasible." 214 W.Va. at 616, 591 S.E.2d at 174. The *Damian* Court also emphasized that "[t]he removal of a juvenile status offender or delinquent from his parent's custody is authorized 'only when the child's welfare or the safety and protection of the public cannot be adequately safeguarded without removal. . . .' *W.Va. Code,* 49–1–1(a)(12)(b) [49–1–1(b)1999]." *Id.* at 616, 591 S.E.2d at 174.

Applying such principles to the case at bar, the procedural history of this matter reveals the extensive efforts undertaken by the lower court and the DHHR to comply with the statutory mandates. An improvement period, with specified conditions designed to accomplish appropriate results, was first implemented. The Appellant did not comply with the conditions of the improvement period, and it was revoked. Additional measures, such as in-home services and personal counseling were also implemented, to no avail. Thus, less restrictive alternatives were attempted and were unsuccessful.

Based upon our review of the record, it appears that the evidence adduced at the hearing legally established the necessity of transferring legal custody of the Appellant to the DHHR and removing him from his home. Under the circumstances presented to the lower court, its action did constitute the least restrictive alternative.

The Appellant further contends that the dispositional order is invalid because an adjudicatory order had not been entered in this case. The lower court did rule from the bench that the Appellant was being adjudicated as a status offender based upon poor school attendance.[9] No order was entered at that time, apparently due to the difficulty encountered in obtaining medical records. Although the Appellant contends that the court's failure to enter a written order memorializing its decision rendered subsequent action void, this Court has previously indicated that orders which have not been reduced to writing still have the full force and effect of written orders. In syllabus point one of *Moats v. Preston County Commission*, 206 W.Va. 8, 521 S.E.2d 180 (1999), for instance, this Court explained that "[g]enerally, an order is effective when a court announces it." Syllabus point two of *Moats* continued: "An oral order has the same force, effect, and

validity in the law as a written order. In other words, the actual physical possession of a written order is not required to effectuate said order." The lower court clearly had adjudicated the Appellant as a status offender prior to entering the dispositional order. In view of the lower court's findings on the record, we conclude that no reversible error was committed in this case.[10]

B. The Appellant's Hearsay Contentions

In the Appellant's second assignment of error, he maintains that testimony regarding the number of school days missed by the Appellant should not have been admitted into evidence during the March 2003 hearing because the truancy officer, as the individual officially in charge of such records, was unavailable to testify. As explained above, Appellant's counsel objected to the State's attempt to introduce evidence of lack of school attendance through Kathy Cox, a youth services worker. The youth services worker had obtained the information from an attendance report provided by the truancy officer. The truancy officer herself, however, was not present at the hearing. The court sustained the objection, in part, and prevented testimony as to specific days missed, but allowed that witness to testify regarding general information about the Appellant's continued lack of satisfactory school attendance. Two other witnesses, Tracy Keener and Kathy DeBose, testified about the Appellant's general absences from school without objection by Appellant's counsel.

Despite the failure to object to continued investigation of this issue through testimony of Mr. Keener and Ms. DeBose, the Appellant contends on appeal that only the truancy officer should have been permitted to testify regarding absences, since she was the authority in charge of the official attendance records. During the hearing, the lower court

---

9. During the March 2003 hearing, the court explained: "The Court would note ... that there does not appear to be an Adjudicatory Order in this case.... [T]here was an adjudication because The Court found that [the Appellant] was a status offender based on the allegations in the original Petition, his failure to, or his habitual absence from school as alleged, The Court found it to be true...."

10. Clearly, the better practice would be for the court to reduce the order to writing for prompt entry. It appears that logistical difficulties prevented such entry in this case. We trust that an appropriate order has been, or shortly will be, prepared and entered to complete the record.

observed as follows: "I know Ms. Schillace [the truancy officer] wasn't here and ordinarily in Probation Revocation proceedings, hearsay is admissible. The Court can take into account the nature of the testimony that was presented and what weight to give it."

In response to the Appellant's claims that the evidence should not have been introduced, the State argues that the Rules of Evidence did not apply to the dispositional hearing because it was similar in many respects to a probation revocation hearing, a proposition in accord with the lower court's quote above. Evidence of this nature is admissible, the State argues, as long as the juvenile's right to confront and cross-examine is preserved. In this case, Appellant's counsel freely and completely exercised his right to cross-examine the witnesses concerning their testimony. Further both the Appellant and his mother testified and admitted his excessive absences from school.

In *Damian*, this Court reviewed the myriad of contexts in which this Court has previously addressed the issue of hearsay evidence in proceedings involving juveniles. This Court examined cases from the abuse and neglect, child custody, and juvenile transfer arenas,[11] and found that while it did not need to "specifically rule on the [hearsay] issue raised" in that appeal, the issues required clarification for future situations. 214 W.Va. at 619, 591 S.E.2d at 177. This Court consequently concluded as follows in *Damian*:

> ordinarily and in the absence of emergency circumstances a circuit court's decision under *W.Va.Code*, 49–5–11a(b)(2) [1998] to award custody of a juvenile status offender to the Department of Health and Human Resources and/or to place a juvenile status offender outside of their parents' home may not be based entirely upon hearsay evidence; and that the constitutional rights of due process, representation by counsel, notice, opportunity to be heard, and to present and cross-examine witnesses must be afforded to the juvenile and the affected

parent in a proceeding brought pursuant to said statutory provision.

*Id.* at 619, 591 S.E.2d at 177.

Our review of the record reveals that the determinations made by the lower court subsequent to the March 2003 hearing were not based entirely upon hearsay evidence. In addition to the general information provided about the Appellant's absence from school, the Appellant and his mother also testified that the Appellant had not been attending school regularly. Moreover, the testimony regarding the failure of intervention techniques was also utilized by the lower court in arriving at the conclusion of home placement. Accordingly, we find no reversible error. We commend this Court's comments in *Damian* to the attention of the bench and bar for application in juvenile status offense matters such as the present case.

Based upon the foregoing, we affirm the decision of the lower court.

Affirmed.

---

**11.** For instance, in *In re E.H.*, 166 W.Va. 615, 276 S.E.2d 557 (1981), a juvenile transfer hearing case, this Court explained that the strict requirements of the Rules of Evidence did not apply to a transfer hearing. The Court did, however, note the juvenile's right to cross-examine witnesses.