# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 16-0154** (Jackson County 15-F-57)

**Candice Brown,**
**Defendant Below, Petitioner**

**FILED**

**March 13, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Candice Brown, by counsel Kevin B. Postalwait, appeals the Circuit Court of Jackson County's January 13, 2016, order sentencing her to a term of incarceration of one to five years for her conviction of one count of conspiracy to commit a felony. The State, by counsel Gordon L. Mowen II, filed a response. On appeal, petitioner argues that the circuit court erred in denying her motion to suppress evidence obtained during a traffic stop because the stop was unlawful, there was no reasonable suspicion to prolong the stop, and in excluding certain photographic evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2015, petitioner was a passenger in a vehicle operated by her co-defendant Latizhon Hill in Ravenswood, West Virginia. After observing what he believed to be a broken tail light emanating a white light on the vehicle, Officer Andrew Boggess initiated a traffic stop. According to Officer Boggess, Ms. Hill appeared nervous and he noticed several small empty plastic bags on the center consol. As a result, Officer Boggess asked Ms. Hill to exit the vehicle. At this point, Ms. Hill declined the officer's request to search the vehicle. After running a check on Ms. Hill's driver's license, Officer Boggess learned that it was suspended through the State of South Carolina. Officer Boggess also learned that Ms. Hill's criminal history included drug possession charges. Approximately six minutes after initiating the stop, Officer Boggess called for a canine unit to respond to the scene. Officer Boggess then requested that petitioner exit the vehicle, and she complied. Officer Boggess asked petitioner if she had a valid driver's license and could drive the vehicle. Despite responding affirmatively, Officer Boggess later discovered that petitioner's license was also suspended by South Carolina and that she also had prior drug charges. Approximately twenty-five minutes after the officer initiated the traffic stop, the canine unit arrived, and, shortly thereafter, the canine signaled the presence of drugs in the vehicle. Officers searched the vehicle and found over 500 grams of heroin in the trunk. Both petitioner

1

and Ms. Hill were arrested and the vehicle was towed. Approximately one week later, Ms. Hill's father and his son picked up the vehicle, at which time they took photographs of the vehicle's tail lights

Thereafter, petitioner was indicted during the June of 2015 term of court with one count of possession with intent to deliver heroin and one count of conspiracy to commit a felony. After the indictment, petitioner moved to suppress the evidence seized as a result of the traffic stop. In September of 2015, the circuit court held a suppression hearing regarding the evidence seized as a result of the traffic stop. During the hearing, Ms. Hill's father testified that, when he arrived to pick up the vehicle, the lens covering the vehicle's brake light was intact, which contradicted the officer's earlier testimony. However, Ms. Hill's father admitted that the lens covering the turn signal on the vehicle was broken and that the hole was roughly the size of a golf ball. Ultimately, the circuit court denied petitioner's motion. Thereafter, petitioner entered a guilty plea to one count of conspiracy to commit a felony, with the condition that she be allowed to appeal the circuit court's ruling on her motion to suppress. The remaining charge was dismissed pursuant to the plea agreement. The circuit court then sentenced petitioner to a term of incarceration of one to five years. It is from the sentencing order that petitioner appeals.

We have previously established the following standard of review:

> "In reviewing the findings of fact and conclusions of law of a circuit court . . . , we apply a three-pronged standard of review. We review the decision . . . under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syllabus Point 1, *State v. Head*, 198 W.Va. 298, 480 S.E.2d 507 (1996).

Syl. Pt. 1, in part, *State v. Georgius*, 225 W.Va. 716, 696 S.E.2d 18 (2010). Moreover, we have held as follows:

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 13, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Further,

> "[i]n contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo* . . . . Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous

interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." Syllabus point 2, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 2, in part, *State v. Bookheimer*, 221 W.Va. 720, 656 S.E.2d 471 (2007). Upon our review, we find no error in the circuit court's ruling below.

As an initial matter, the Court finds that petitioner lacked standing to assert a violation of her constitutional right against unreasonable search and seizure in the circuit court. This Court has previously found that a warrantless search of a vehicle did not constitute a violation of a defendant's constitutional right against unreasonable search and seizure "where the record demonstrated that the defendant, as a passenger in the truck, had no property or possessory interest in the truck, its glove compartment, or the items seized and, therefore, suffered no invasion of a legitimate expectation of privacy." Syl. Pt. 2, in part, *State v. Tadder*, 173 W.Va. 187, 313 S.E.2d 667 (1984). The vehicle in question did not belong to petitioner and, accordingly, she did not have a possessory interest in the vehicle, its trunk, or the items seized. *See Illinois v. Caballes*, 543 U.S. 405, 408, 125 S.Ct. 834, 837 (2005) ("any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that *only* reveals the possession of contraband 'compromises no legitimate privacy interest.'") Accordingly, petitioner suffered no violation of her constitutional right against unreasonable search and seizure and lacked standing to move to suppress the evidence in question on these grounds. However, assuming that petitioner did appropriately challenge the evidence below, she is still entitled to no relief.

There is simply no merit to petitioner's argument that no probable cause existed for the initial traffic stop at issue. In fact, we have previously held that probable cause is not required for a traffic stop, having clearly stated that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. Pt. 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994). Moreover, petitioner's argument on this issue is entirely predicated upon her allegation that the taillight lens in question was intact, contrary to the officer's testimony. Accordingly, petitioner argues that the officer made a mistake of law upon which a lawful traffic stop cannot based. The Court, however, does not agree.

Importantly, petitioner fails to acknowledge that evidence at the suppression hearing established that, although the taillight lens was intact, the lens covering the vehicle's turn signal contained a hole roughly the size of a golf ball. The evidence shows that Officer Boggess witnessed a white light emanating from the rear of the vehicle and mistakenly believed that it was caused by a broken taillight when it was actually caused by a broken turn signal. The officer's perception constitutes a mistake of fact, not a mistake of law as petitioner alleges. This Court has previously addressed mistakes of law and invalidated a traffic stop where an officer mistakenly believed that a defendant violated the law due to a missing side view mirror. *State v. Dunbar*, 229 W.Va. 293, 299, 728 S.E.2d 539, 545 (2012). In that case, we held that "[b]ased upon this Court's determination that the lower court incorrectly concluded that the vehicle at issue . . . was being operated in violation of West Virginia Code § 17C–15–1(a), this Court finds that the traffic stop initiated . . . was improper." As is clear from this holding, because the

3

defendant in that case was not violating any statute, the officer's mistake was one of law, not fact. Therefore, the officer did not have a reasonable articulable suspicion that a person in the vehicle committed a crime.

However, in the instant case, the officer was mistaken about a fact, namely, which lens was broken; he was not mistaken about whether Ms. Hill had violated a statute. As the circuit court noted below, both a broken taillight lens and a broken turn signal lens violate the same statute, West Virginia Code § 17C-15-18. Pursuant to West Virginia § 17C-15-18,

> (a) Any motor vehicle may be equipped and when required under this chapter shall be equipped with the following signal lamps or devices:
> (1) A stop lamp on the rear which shall emit a red or yellow light and which shall be actuated upon application of the service (foot) brake and which may but need not be incorporated with a tail lamp.
> (2) A lamp or lamps or mechanical signal device capable of clearly indicating any intention to turn either to the right or to the left and which shall be visible both from the front and rear.
> (b) A stop lamp shall be plainly visible and understandable from a distance of one hundred feet to the rear both during normal sunlight and at nighttime and a signal lamp or lamps indicating intention to turn shall be visible and understandable during daytime and nighttime from a distance of one hundred feet both to the front and rear. When a vehicle is equipped with a stop lamp or other signal lamps, such lamp or lamps shall at all times be maintained in good working condition. No stop lamp or signal lamp shall project a glaring or dazzling light.

As Officer Boggess stated below, the vehicle in question emitted a "glaring or dazzling light," and as the circuit court correctly found, "[t]he fact that it was a defective 'signal lamp' as opposed to what the officer believed was a defective 'stop lamp[]' is of little moment." This Court agrees, as the vehicle's broken turn signal lens clearly violated West Virginia Code § 17C-15-18. Moreover, we have held that

> [w]hen one or more of the tail lamps on a vehicle originally equipped with multiple tail lamps are not in proper working condition, the provisions of West Virginia Code § 17C-15-1(a) (2004) that establish a misdemeanor offense for the operation of an unsafe or improperly equipped motor vehicle are violated.

Syl. Pt. 2, *Strick v. Cicchirillo*, 224 W.Va. 240, 683 S.E.2d 575 (2009). Based on this holding, it is clear that Officer Boggess had a reasonable articulable suspicion to stop the subject vehicle, under both West Virginia Code §§ 17C-15-18 and 17C-15-1(a).[1] Accordingly, we find no error

---

[1]According to West Virginia Code § 17C-15-1(a),

> [i]t is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such

(continued . . .)

in the circuit court's determination that the traffic stop at issue was lawful or in its denial of petitioner's motion to suppress on this ground.

Next, the Court finds no merit to petitioner's argument that Officer Boggess did not possess reasonable suspicion to prolong the traffic stop in question. Simply put, petitioner's argument on this issue misstates the facts below, as the record on appeal is clear that the officer did not extend the stop in question. This Court has previously held as follows:

> Following the law established by the United States Supreme Court in *United States v. Rodriguez*, -- U.S. --, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), and *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), a police officer may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff of the outside of a vehicle.

Syl. Pt. 7, *State v. Brock*, 235 W.Va. 394, 774 S.E.2d 60 (2015). Based upon this holding, it is clear that an officer may extend an otherwise-completed traffic stop with sufficient reasonable suspicion. However, the record in this matter demonstrates that the traffic stop in question was not completed at the time the canine unit arrived. Neither petitioner nor Ms. Hill had valid driver's licenses, which, as the circuit court correctly found, "meant that neither was going to drive the vehicle" away from the scene. Accordingly, as Officer Boggess testified, he was roughly "three-quarters of the way through writing a citation" when the canine unit arrived. As such, there was simply no extension to the traffic stop, as petitioner alleges. For these reasons, we find no error in the circuit court's determination that the traffic stop in question was legal or in its denial of petitioner's motion to suppress on this ground.

Finally, the Court finds no merit to petitioner's argument that the circuit court erred in excluding photographic evidence of the taillight on the subject vehicle. Petitioner's entire basis for this argument is that the photographs in question, taken by Ms. Hill's father after her arrest, showed the brake light lens was intact. However, petitioner once again ignores the fact that Ms. Hill's father also testified that the turn signal lens was broken. As addressed above, the fact that the brake light lens was intact is immaterial in light of the fact that the turn signal lens was broken in violation of both West Virginia Code §§ 17C-15-18 and 17C-15-1(a). We have previously held that

> "[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court

---

unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article, or which is equipped in any manner in violation of this article, or for any person to do any act forbidden or fail to perform any act required under this article.

will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 4, in part, *State v. Larry M.*, 215 W.Va. 358, 599 S.E.2d 781 (2004). According to Rule 401 of the West Virginia Rules of Evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." The photographic evidence petitioner sought to introduce was simply irrelevant, given that the fact that the brake light lens was intact was of no consequence in determining the matter. As noted above, Ms. Hill's father admitted that the turn signal lens was broken, thus obviating the need to establish whether the brake light lens was intact. Accordingly, we find no abuse of discretion in the circuit court's exclusion of this photographic evidence.

For the foregoing reasons, the circuit court's January 13, 2016, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**:  March 13, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker