# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 17-0537** (Raleigh County 13-F-226-B)

**Michael Joseph Stines,**
**Defendant Below, Petitioner**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Joseph Stines, by counsel Robert Dunlap and Sarah Smith, appeals his October 26, 2016, convictions of murder in the first-degree and wanton endangerment. Respondent State of West Virginia, by counsel Kristin Keller, filed a response in support of the circuit court's order. Petitioner filed a reply and supplemental appendices.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2012, Christopher Ward ("the decedent") and his wife Sharon Ward ("Ms. Ward") separated and, shortly thereafter, initiated divorce proceedings. In or around January of 2013, petitioner began a romantic relationship with Ms. Ward. The Wards' divorce proceedings were dismissed in March of 2013, when they reportedly reconciled. Despite the Wards' reconciliation, petitioner's romantic relationship with Ms. Ward continued.

On April 18, 2013, the decedent returned to the home he shared with Ms. Ward and their children to retrieve some of his personal items and tools.[2] When the decedent arrived at the home, Ms. Ward was talking to petitioner on the telephone. Petitioner asked Ms. Ward if she wanted him to come to the home while her husband was there, to which Ms. Ward replied "no"

---

[1] While acknowledging the objection of respondent's counsel, we hereby grant petitioner's motions for leave to file supplemental appendices pursuant to Rule 7(g) of the West Virginia Rules of Appellate Procedure.

[2] The decedent resided with his wife and children but was temporarily staying at his parents' nearby home.

and ended their telephone call. Petitioner then began calling the Ward home directly and, over the course of the evening of April 18, 2013, spoke with the decedent multiple times. Petitioner contends that during these telephone calls, the decedent made threats against him; however, petitioner acknowledged that he and the decedent were bantering back and forth, trading insults. During one such call, petitioner alleges that he heard arguing and screaming in the background. Further, petitioner claims that he received a phone call from one of the Ward children asking him to come to the Ward residence to render assistance to Ms. Ward, and to bring his gun. Thereafter, despite Ms. Ward's request for him to stay away, petitioner drove to the Ward home.

Once arriving at the Ward home, petitioner, who was carrying a loaded firearm, entered the home through an open garage door. Petitioner went into the living room and peered down a hallway where he reportedly observed the decedent and Ms. Ward arguing. Petitioner claims he witnessed the decedent push Ms. Ward. Thereafter, petitioner pointed his gun at the decedent in an attempt to intimidate him to refrain from further physical contact with Ms. Ward and compel him to leave the residence. According to petitioner, the decedent then lunged at him and the two engaged in a physical altercation, during which two shots were fired. One of the bullets struck the decedent in the abdomen, and the other came to rest in a window frame in one of the Ward children's bedrooms. When paramedics arrived at the residence, the decedent was lying adjacent to the hallway on the floor of the master bedroom. The decedent was subsequently transported to a local hospital where he later died as a result of his injuries.

When law enforcement officers arrived at the Ward residence following the shooting, petitioner volunteered to officers that he shot the decedent and identified his personal firearm as the murder weapon. At the scene, Ms. Ward told officers that petitioner shot her husband. Ms. Ward told officers that she had advised petitioner to stay away from the residence that evening and described that she, her husband, and their three children were in the master bedroom when petitioner fired the first shot. Ms. Ward told officers she was in the process of getting the children out of the master bedroom and to the interior front of the residence as petitioner fired the second shot.

A post-mortem examination of the decedent revealed that he sustained a gunshot wound to the abdomen that caused massive internal injury and internal bleeding, with the bullet lodged in his lower spine. In addition to the gunshot wound, the post-mortem examination revealed that the decedent suffered "multiple blunt force injuries to the back, top, and front of his head."

Officers at the scene completed a search of the vehicle petitioner drove to the Ward home, and discovered a written "Pest Control Service Agreement" dated February 7, 2013.[3] This agreement, which appeared to be a falsified work order from the extermination company for which petitioner worked, was endorsed by both petitioner and Ms. Ward and included a start date of January 4, 2013. The agreement is described below.

---

[3] On the evening in question, petitioner drove a vehicle belonging to his employer, Whitman Exterminating Company.

Grand jury proceedings related to the decedent's death ultimately commenced. At those proceedings, petitioner testified and admitted that he shot the decedent. Further, petitioner confirmed that he was not invited to the Ward home on the evening in question and that Ms. Ward had told him that her husband was at the home "just to get his stuff." Petitioner testified that before entering the Ward residence he unsheathed the gun from the holster and that the gun had "one [bullet] in the chamber." Petitioner admitted that he hit the decedent over the head once or twice with the gun before shooting him. When asked if he, at any time, believed it was necessary to use deadly force to prevent bodily injury or death to himself or others, petitioner stated, "after [the decedent] grabbed the gun, yes, probably." However, before this, petitioner stated, "I wasn't for sure."

In June of 2013, petitioner was indicted for the first-degree murder of the decedent, with use of a firearm, and the wanton endangerment. In October of 2016, petitioner's jury trial began. Ms. Ward's trial testimony was different from the version of events she relayed to officers at the crime scene. At trial, Ms. Ward testified that she was at the end of the hallway, by the master bedroom, with her oldest son and did not know the whereabouts of her two younger children when petitioner fired the gun. However, when confronted with her prior statement, Ms. Ward claimed a memory loss but confirmed that her prior statement indicated that she and her children were in the master bedroom when petitioner fired the first shot.

One of the investigating officers took a video and multiple still photographs of the crime scene, which were subsequently introduced into evidence at trial. The officer testified that one of the bullet casings was discovered in the hallway outside of the master bedroom, with another casing found inside the master bedroom, and a bullet was recovered in one of the children's bedrooms across the hall from the master bedroom. A second investigating officer testified that following the shooting he took petitioner's statement. During this statement, petitioner admitted that when he arrived at the Ward home on the evening in question, he entered the home and observed the decedent standing at the opposite end of the hallway, adjacent to the master bedroom, and "raised the gun up and pointed it at" the decedent.

After the State presented its case, petitioner's counsel acknowledged that evidence of the alleged character or reputation or conduct of the decedent prior to petitioner's April 18, 2013, arrival at the Ward residence would be inadmissible unless and until there was evidence that the decedent was the aggressor at the time of the shooting. Thereafter, petitioner was called to testify and advised that, on the evening of the shooting, he first observed the decedent at the end of the hallway of the Ward home with his back toward the wall. Petitioner admitted that he approached the decedent and "aimed the gun" at him. Petitioner testified that the decedent attempted to grab the gun and throw punches, at which time petitioner struck the decedent with the gun multiple times in an effort to try and "knock him out." Under cross-examination, petitioner admitted that despite his claims that he was concerned for the welfare of Ms. Ward and her children, he never called 9-1-1 or law enforcement for assistance. Further, petitioner testified that instead of going to Ms. Ward's aid when he entered the Ward home, he walked directly to the decedent, whose back was against the wall, and pointed the gun at him. Even though petitioner claimed it was his intent only to scare the decedent, petitioner agreed that he "never conveyed such intent to" the decedent. Further, petitioner admitted that if he had only intended to scare the decedent, he could have easily have "pushed" on the gun's magazine release, but did not do so. Petitioner further

3

acknowledged that firing a gun in a small house where three children were present posted a "substantial possibility that one of those kids . . . could get hurt."

At the conclusion of presentation of evidence, the parties submitted multiple proposed jury instructions. Respondent submitted a self-defense instruction and an instruction on the defense of accident. Petitioner did not submit any self-defense instructions. The jury was instructed on first-degree murder by premeditation, first-degree murder by felony murder, second-degree murder, wanton endangerment with a firearm, accident, and self-defense.

On October 26, 2016, petitioner was found guilty of first-degree murder by use of a firearm, with no recommendation of mercy, and wanton endangerment with a firearm. On December 15, 2016, petitioner was sentenced to life imprisonment for the first-degree murder conviction without mercy, along with an additional five years for his wanton endangerment conviction. It is from his October 26, 2016, conviction that petitioner now appeals.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underling factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

In support of his petition for appeal, petitioner asserts eight assignments of error. In his first assignment of error, petitioner argues that the circuit court abused its discretion in prohibiting him from presenting the affirmative defense of self-defense at trial. We have long held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

As to claims of self-defense, we have identified four elements to consider when examining a claim of self-defense.

> . . . that he or she was not the "aggressor" and did not provoke the attack. . . . The second and third required elements are that a defendant show that the circumstances of the attack formed a "reasonable" basis to believe, and that the defendant did believe that he or she was at "imminent" risk of death of serious bodily injury. . . . the "reasonableness" of a defendant's belief that death or serious bodily injury was "imminent" is both a subjective and an objective inquiry. The fourth required element is that a defendant must show that his or her actions were "proportionate" to the danger.

*State v. Harden*, 223 W. Va. 796, 809, 679 S.E.2d 628, 641 (2009).

4

Despite petitioner's allegations, the record herein reflects that petitioner was not precluded from presenting a self-defense claim at trial. Here, the circuit court instructed the jury on self-defense and petitioner testified that he acted in self-defense in shooting petitioner. While petitioner is critical of the circuit court's ruling regarding the admission of evidence of the decedent's character and prior bad acts, a review of the record belies petitioner's inference that he was wholly prohibited from offering testimony to support his self-defense claim. Under direct examination, petitioner testified that he brought a gun with him to the decedent's residence on the evening of the shooting because he "had reason to believe that he [the decedent] might be violent." Petitioner further testified that he brought a gun with him at the request of one of the decedent's children who "feared something was going to happen to him and his mom." While the circuit court did exclude, under Rule 403 of the West Virginia Rules of Evidence, evidence of a specific prior incident wherein petitioner personally observed the alleged violent nature of the decedent, petitioner was permitted to testify that he acted in self-defense and generally described the decedent as violent.

Further, as respondent asserts, and as is well established in the record, petitioner's trial counsel agreed, during a pre-trial hearing and again at the close of the State's presentation of evidence at trial, that evidence of the alleged character or reputation or conduct of the decedent prior to the shooting would not be admissible, per this Court's holding in *State v. Collins*, 154 W. Va. 771, 180 S.E.2d 54 (1971), unless and until evidence was presented that the decedent was the aggressor at the time of the shooting. We have previously held that

> "[w]hen in a prosecution for murder the defendant relies upon self-defense to excuse the homicide and the evidence does not show or tend to show that the defendant was acting in self-defense when he shot and killed the deceased, the defendant will not be permitted to provide that the deceased was of dangerous, violent and quarrelsome character or reputation." Syl. pt. 1, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971).

Syl. Pt. 1, *State v. Smith*, 198 W. Va. 441, 481 S.E.2d 747 (1996). Here, evidence to establish that the decedent was the aggressor, necessary to substantiate a claim of self-defense, was not presented at trial. In fact, at trial, petitioner readily admitted that the decedent's back was facing a wall as petitioner approached him with a raised firearm. Petitioner further admitted to striking the decedent in an attempt to incapacitate or intimidate him and that a struggle between petitioner and the decedent over the firearm commenced, ultimately leading to the discharge of the firearm. Despite the absence of evidence establishing the decedent as the aggressor, the circuit court permitted the jury to consider petitioner's claim of self-defense. The jury, after weighing the evidence, did not find that petitioner acted in self-defense. Accordingly, based on our review of the record, we find that the circuit court did not abuse its discretion.

In his second assignment of error, petitioner argues that the circuit court abused its discretion by prohibiting petitioner from presenting evidence of defense of another. Again, petitioner is critical of the circuit court's exclusion of evidence of the violent and turbulent character of the decedent. We have previously held that

[t]o establish the doctrine of defense of another in a homicide prosecution, a defendant must show by sufficient evidence that he or she used reasonable force in a situation where the defendant had a reasonable belief of the lawfulness of his or her intervention on behalf of another person who was in imminent danger of death or serious bodily harm from which such person could save himself/herself only by using force, including deadly force, against his or her assailant, but was unable to do so.

Syl. Pt. 3, *State v. Cook*, 204 W. Va. 591, 515 S.E.2d 127 (1999).

Here, the circuit court ruled that petitioner's observation of what he alleged was the decedent pushing or tripping Ms. Ward on the evening of the shooting was insufficient to support a defense of another defense. Based upon our review of the record before us, we agree. As noted in *Cook* at 597, 515 S.E.2d at 133, "[t]he defense of another doctrine closely parallels the common law doctrine of self-defense." Further, we have reasoned that

[t]he amount of force that can be used in self-defense is that normally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return.

*State v. W.J.B.*, 166 W. Va. 602, 608, 276 S.E.2d 550, 554 (1981). Accordingly, based on our review of the record herein, we find no error. The circuit court did not abuse its discretion.

Petitioner's third, fifth, sixth, and seventh assignments of error address the circuit court's admission of certain evidence. With respect to the admission of evidence, we have generally stated that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 3, *State v. Larry M.*, 215 W. Va. 358, 599 S.E.2d 781 (2004) (citation omitted). Further, we have held that:

"[t]he action of a circuit court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds*, *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 1, *State v. Calloway*, 207 W. Va. 43, 528 S.E.2d 490 (1999). "This Court reviews disputed evidence in the light most favorable to its proponent, [in this case, the State,] maximizing its probative value and minimizing its prejudicial effects." *State v. LaRock*, 196 W. Va. 294, 312, 470 S.E.2d 613, 631 (1996); s*ee also State v McGinnis,* 193 W. Va. 147, 159, 455 S.E.2d 516, 528 (1994).

With these precepts in mind, we now turn to assignment of error number three, in which petitioner contends that the court abused its discretion in prohibiting petitioner from presenting evidence of the decedent's character or reputation as a dangerous and quarrelsome man. We have held that

"Rule 404(a)(2) of the West Virginia Rules of Evidence essentially codifies the common law rules on the admission of character evidence of the victim of a crime. In particular, under our traditional rule, a defendant in a homicide . . . case who relies on self-defense . . . , may introduce evidence concerning the violent or turbulent character of the victim including prior threats or attacks on the defendant. This is reflected by *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596 (1983): 'In a prosecution for murder, where self-defense is relied upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant, it is competent for the defense to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should be allowed to give evidence thereof.' (Citations omitted)." Syl. pt. 2, *State v. Woodson*, 181 W.Va. 325, 382 S.E.2d 519 (1989).

Syl. Pt. 2, in part, *Dietz v. Legursky*, 188 W. Va. 526, 425 S.E.2d 202 (1992).

Rule 404(a)(2)(B) of the West Virginia Rules of Evidence permits a defendant, in limited circumstances, to offer evidence of an alleged victim's pertinent character traits. Rule 405(a) of the West Virginia Rules of Evidence identifies the methods of proving character evidence by testimony about the person's reputation or by testimony in the form of an opinion; but only permits reference to specific instances of the person's conduct under cross-examination of the character witness. In *Dietz*, we further held that

[i]n a homicide case . . . where the defendant relies on self-defense . . . under Rule 404(a)(2) and Rule 405(a) of the *West Virginia Rules of Evidence*, character evidence in the form of opinion testimony may be admitted to show that the victim was the aggressor if the probative value of such evidence is not outweighed by the concerns set forth in the balancing test of Rule 403.

Syl. Pt. 3, in part, *Dietz*. In the instant case, the circuit court held in an in camera hearing at which petitioner testified as to his knowledge regarding the decedent's character, which was limited to petitioner's personal observation of the decedent's during one prior incident wherein the decedent was reportedly verbally abusive to his own family. At the conclusion of petitioner's testimony, the circuit court found that "while perhaps tense," this prior incident was "not very probative." The circuit court noted that although there might be some probative value, the incident was not significantly probative of evidence that would support the conclusion that the decedent generally exhibited a violent and quarrelsome nature. The circuit court further noted that "any minimal probative value" assigned to such evidence was "easily outweighed by the [Rule] 403 concerns" such as the "danger of unfair prejudice, confusing the issues," and misleading the jury. We agree with the circuit court's analysis and find no abuse of discretion and no error.

7

In his fifth assignment of error, petitioner argues that the circuit court abused its discretion by prohibiting the testimony of the petitioner's retained expert, a forensic scientist, due to an alleged defect in the expert's methodology. Per petitioner, his expert was to offer an opinion as to the physical distance between petitioner and the decedent when petitioner's firearm was discharged. In completing his analysis, the expert examined the crime scene, reviewed autopsy photos, and test fired weapons.

During an October 12, 2016, pre-trial hearing, respondent made objections to the qualifications of petitioner's expert and questioned the expert's work experience, prior qualifications as an expert, and professional association membership. Under direct examination at the pre-trial hearing, the expert testified that the lethal gunshot originated at a distance of 2.74 to 11.5 inches away from the decedent's person. However, the expert refused to quantify his findings to a reasonable degree of scientific certainty. Ultimately, the circuit court, citing *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Rule 702 of the West Virginia Rules of Evidence, ruled that petitioner's expert could not testify at trial because his methodology was novel and his protocols "were not generally accepted in the scientific community." Petitioner now contends that the circuit court abused its discretion in denying the admission of his expert's testimony, as the weight of the testimony of conflicting experts is a matter of fact to be determined by a jury.

Conversely, respondent argues, and we concur, that the circuit court did not abuse its discretion in ruling that the methodology employed by petitioner's expert on distance determination failed to satisfy the requirements of Rule 702 of the West Virginia Rules of Evidence. Rule 702 permits the testimony of expert witnesses if their specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue" and if the testimony is the "product of reliable principles and methods." As to the qualification of experts, we have long held that "[w]hether a witness is qualified to state an opinion is a matter which rests within the discretion of the circuit court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. Pt. 5, *Overton v. Fields*, 145 W. Va. 797, 117 S.E.2d 598 (1960). Here, as the circuit court determined that the protocols used by petitioner's expert were not generally accepted in the scientific community, we find no abuse of discretion and no error. Further, we note that the physical distance between the decedent and petitioner was not "a fact in issue" pursuant to Rule 702. At the time of the shooting, the close distance between petitioner and the decedent was indisputable, as petitioner was close enough to strike the decedent on or about his head with the firearm.

In his sixth assignment of error, petitioner contends that the circuit court abused its discretion in excluding certain evidence regarding the decedent's blood alcohol level at the time of the shooting.[4] Petitioner argues that it was critical for the jury to hear evidence regarding the

---

[4] In his petition for appeal, petitioner also claims, as error, the circuit court's exclusion of evidence that a collapsible baton was discovered in the decedent's possession following the shooting. However, petitioner does not reference the baton in his discussion of this assignment of error. Further, respondent argues, and petitioner does not refute, that petitioner never sought to introduce evidence related to the baton at trial. "'Our general rule is that nonjurisdictional **(continued . . .)**

decedent's blood alcohol level, as it is an indicator of the decedent's frame of mind at the time of the shooting. Under the specific facts of this case, we disagree. Here, the circuit court completed a sound and reasoned analysis, pursuant to Rules 401 and 403 of the West Virginia Rules of Evidence, and determined the admission of such evidence was improper as there was a substantial likelihood of the danger of unfair prejudice to the decedent. Given the circuit court's broad discretion with regard to the admission of evidence, we find no error. *See State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999).

In his seventh assignment of error, petitioner asserts that the circuit court abused its discretion by allowing the State to admit into evidence the "service agreement" between the petitioner and the decedent's wife, over petitioner's objections as to relevancy. The service agreement, a falsified pest control service agreement, is sexually explicit in nature and details petitioner's intent to complete inspections and probes of Ms. Ward's bodily organs three or more times a week. It further sets forth specific instructions as to the particular sex acts petitioner envisioned sharing with Ms. Ward. Petitioner alleges the agreement had little probative value, as petitioner and Ms. Ward did not deny that they were sexually involved at all times relevant hereto. Hence, admission of the agreement was simply a means to inflame the jury and elicit sympathy for the decedent. Petitioner argues that even if this Court were to find some relevance in the agreement, its sexually charged content would undoubtedly engender unfair prejudice to petitioner in amount that would significantly outweigh its probative value.

Conversely, respondent argues that the circuit court did not abuse its discretion in permitting the service agreement to be admitted as evidence. Respondent notes that the agreement is a document, which substantiates and reflects the relationship between two of the involved parties, the length of their relationship, and evidences petitioner's motive and intent prior to the shooting. Respondent further argues that petitioner made no showing of unfair prejudice in the admission of such evidence at trial. Under the limited facts and circumstances of this case, we agree with respondent and find no abuse of the circuit court's discretion in the admission of service agreement as evidence. The circuit court conducted a sound, reasoned, and thorough analysis. Accordingly, we find no error.

In his fourth assignment of error, petitioner contends that the circuit court abused its discretion by issuing a pre-trial ruling denying petitioner the right to rely on the defenses of accident and self-defense simultaneously. Petitioner contends that he presented sufficient evidence to support both theories. However, the record does not reflect that the circuit court issued any ruling denying petitioner "the right to rely on the defenses of accident and self-defense simultaneously." Throughout the trial, petitioner claimed both accident and self-defense and the jury was instructed as to both theories. Accordingly, we find no merit to petitioner's argument in this regard and find no error.

---

questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we find that petitioner is entitled to no relief as to his allegations related to the baton.

In his final assignment of error, petitioner contends that the circuit court abused its discretion by denying defense counsel's request to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter related to Count 1 of the indictment when the facts clearly supported such instructions. The question of whether a jury was properly instructed is a question of law and the review is de novo. *See* syllabus point one *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

> [A] trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Petitioner argues that it is clear from the circumstances of the case, that he lacked premeditation or deliberation in killing the decedent. At trial, petitioner testified that he had no intention to shoot the decedent and described the same as "an accident." Because petitioner denied his intention to kill, he contends that the only resultant jury instructions that were proper were voluntary manslaughter and involuntary manslaughter instructions. Conversely, respondent argues that the circuit court did not abuse its discretion in determining that jury instructions as to the offenses of voluntary and involuntary manslaughter were improper.

Based upon our review of record, we agree with respondent. Here, we find that the jury charge, when reviewed as a whole, sufficiently instructed the jury so they understood the issues involved. The jury was instructed on the elements of both first- and second-degree murder charges, heard conflicting evidence as to the actions of petitioner and the decedent and, as was their duty, made determinations as to the credibility of witnesses. We have held that "[t]he trier of fact is uniquely situated to make such [credibility] determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). As the circuit court did not abuse its discretion in instructing the empaneled jury, we find no error.

For the foregoing reasons, we affirm petitioner's convictions.

Affirmed.

**ISSUED:** November 16, 2018

10

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment